Opinion delivered by
Walker, J.
The petition for this charter was presented to the court by a majority of members composing an association of the same name which was established in 1867, by mutual consent, but not incorporated.
The application is made under the provisions of the Act of 29 April, 1874, P. L., p. 73, for a charter of the first class enumerated in that Act, for educational and religious purposes.
A minority of the members of this Mutual Association have presented a protest to the court, and filed exceptions to the approval of the charter.
These exceptions I purpose to consider in their order.
1st. As to the first exception, that the notice was not given according to law, it is sufficient to say, that this application was made in open court and published in two newspapers as required by the Act—though the time and place of making the application are not mentioned. This should usually be done, when made before a law judge. But in this case there was actual notice, and an appearance before the court, and an argument upon the exceptions.
2nd. That the charter does not set forth the amount of the capital stock, nor the number and value of the shares.
The 3d section of the Act (p. 75), under the 7th head, requires this to be done, if there is any capital stock, and does not in my *34 opinion apply to corporations of the first class, which are not for profit.
3d. The charter does not limit the amount and value of the real estate to be held by the corporation.
The 10th division of the 2d section, p. 74, limits the amount of the clear yearly value to $20,000.
Previous to the passage of this Act it was made the duty of the court in granting a charter of incorporation for any purpose to limit the yearly income of such corporation, other than from real estate, to such sum as in the opinion of the court would not be injurious or prejudicial to the community. See Act 20 February, 1854 ; Pamp. Laws, 91; Purdon Dig. 283, pl. 8.
The limitation is now in the Act itself.
4th. That the charter contains no provision for further amendments, or the enactment of by-laws.
*The 42d section of the Act (p. 106) provides that as often as the corporations mentioned in the first class (of which this is one) shall be desirous of improving, amending or altering the articles and conditions of their charter, that it shall be lawful for such corporations to specify the improvements, amendments and alterations, that they desire and exhibit the same to the Court of Common Pleas of the proper county in which the corporation is situate ; and if the court shall be of the opinion that they are lawful and beneficial, and not in conflict with the statute and the Constitution, they shall direct notice, <fec., and after decree such amendments shall be recorded and be taken as part of the charter.
This is similar to the 14th section of the Act of 13 Oct. 1840. (P. Dig. 284, pl. 17.)
These Acts therefore place the making of future amendments entirely under the control of the court and deny the corporation that power, except in the mode and manner prescribed by the Acts. By the 1st section, 6th head of the Act of 1874 (p. 73), the power to make by-laws, not inconsistent with law for the management of its property, the regulation of its affairs and the transfer of its stock is expressly conferred upon the corporation.
5th. That the charter does not define the rights and duties of its members.
This is done sufficiently in the 2d section of the charter.
6th. That the charter places no restrictions upon the application *35 of the funds and property of the association. It should limit and restrain the same to purposes for which the association is formed.
This being a corporation of the first class for educational and religious purposes, without capital, and the members being only obliged to pay assessments for taxes and for their debts, no restriction, as I understand it, would be necessary.
Besides, any attempt to divert from their legitimate channel the funds or property of the corporation, by the trustees, could be at once restrained.
7th. That the charter authorizes persons to become members of the association who are not citizens of the Commonwealth—females may become members.
The Act of 1874 provides that corporations may be formed under the Act by the voluntary association of five or more persons and that three citizens must subscribe to the charter.
Previous Acts of Assembly required all the members of the corporation to be citizens of the State. See Act 6 April, 1791, P. Dig. 281, pl. 1; Act 13 Oct. 1840, P. Dig. 283, pl. 11; Act 26 March, 1867, P. L. p. 45, sec. 3.
*The Act of 1874 differs from these previous enactments in this respect and this charter is in conformity with it.
If Ave were to hold that all the members must be citizens, AA'hen the Acts say persons, it would be judicial legislation.
8th. That the charter if granted will divert the property and funds of many of the original contributors and donors from its original destination, &c.
There is much force in this exception. There should be no diversion of the funds and property of the original donors.
The charter should restrict its membership to the members of the Evangelical Lutheran congregation.
I have examined this charter carefully and in detail, and find it to be in conformity Avith the Act of Assembly, and with the amendment before referred to the charter is approved.